[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14639
Non-Argument Calendar
_____

D.C. Docket No. 4:05-cr-00059-BAE-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARTIN J. BRADLEY, JR.,

Defendant-Appellant,

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(June 14, 2013)



Before MARTIN, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Martin J. Bradley, Jr., appeals his 180-month sentence, which was imposed after this Court vacated his original sentence of 225 months. *See Bradley v. United States*, 644 F.3d 1213 (11th Cir. 2011). Bradley raises three issues on appeal. We affirm as to all three issues.[1]

## I.  LEADERSHIP ROLE ENHANCEMENT

Bradley argues the district court clearly erred in applying a four-level "leadership role" adjustment pursuant to U.S.S.G. § 3B1.1(a)[2] for his racketeering [RICO] and money-laundering conspiracy offenses under 18 U.S.C. §§ 1962(c) and 1956(h). In Bradley's view, "no evidence or findings of fact . . . support the conclusion that [he] organized, led, managed, or supervised one or more participants who engaged in criminal activities."

Bradley's contention is meritless. When applying a leadership-role enhancement under § 3B1.1, "it is appropriate to judge a RICO defendant's role in

---

[1] We review a defendant's role in the offense under U.S.S.G. § 3B1.1 for clear error. *United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005). We also review a district court's determination as to amount of money involved in a money laundering offense for clear error. *United States v. Mullens*, 65 F.3d 1560, 1563 (11th Cir. 1995). We review a district court's relevant conduct determination de novo. *United States v. Alred*, 144 F.3d 1405, 1418 (11th Cir. 1998).

[2] Section 3B1.1 of the Sentencing Guidelines provides for a four-level increase in a defendant's offense level when the government shows by a preponderance of the evidence the defendant organized or led at least one participant in "a criminal activity that involved five or more participants or was otherwise extensive." *See* U.S.S.G. §3B1.1(a); *see also id.* comment. (n.2); *Alred*, 144 F.3d at 1421 (noting the government's burden at sentencing is only a preponderance of the evidence). A "participant" is defined as "a person who is criminally responsible for the commission of the offense," even if that person was not convicted of the offense. § 3B1.1, comment. (n.1).

2

the offense with respect to the overall RICO conspiracy." *United States v. Yeager*, 210 F.3d 1315, 1317 (11th Cir. 2000); *see also* U.S.S.G. § 1B1.3(a)(2) (providing that, when offenses are grouped under the guidelines, the defendant's role encompasses all relevant conduct, including "all acts or omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction"). In evaluating a defendant's role in the overall criminal enterprise, sentencing courts are to consider, among other things, "the exercise of decision making authority, the nature of participation in the commission of the offense, . . . the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *See* § 3B1.1, comment. (n.4).

Here, the overall RICO enterprise could not have existed, or flourished to the extent it did, without Bradley's involvement and leadership. First, Bradley exercised "decision making authority" in purchasing a Puerto Rican pharmacy that, in order to further his racketeering offenses, fraudulently obtained drugs at reduced prices for resale in the United States. *See id.* Second, Bradley exercised a considerable "degree of control and authority . . . over others" in directing his confederates to establish offshore accounts that were used to pay for fraudulently obtained medications. *See id.* Third, Bradley ordered his daughter and son-in-law, among others, to pay his confederates in the racketeering enterprises. *See id.*

3

Fourth, Bradley had a planning and organizational role in these offenses, as he controlled the bank accounts used to transfer the wire-fraud and mail-fraud proceeds, and actively participated in those transfers. *See id.* Accordingly, the district court did not clearly err in concluding Bradley's role in the offenses warranted a leadership enhancement under § 3B1.1.

## II. MONEY LAUNDERING ENHANCEMENT

Next, Bradley argues the district court clearly erred in calculating the total value of the funds he conspired to launder, in violation 18 U.S.C. § 1956(h). Bradley contends the district court should not have included $2,083,268.41 worth of checks in its $8,494,648.41 laundered-funds calculation, because those checks were not part of the relevant conduct of the money-laundering conspiracy. According to Bradley, because the checks related to separately charged racketeering offenses involving his California scheme, they were not within the scope of the money-laundering conspiracy. On this theory, the district court erred in treating the proceeds of Bradley's crimes as though they were fungible.

Bradley's argument is unavailing. In relevant part, the guidelines define "laundered funds" to include all "funds . . . involved in the transaction[s]" that violated 18 U.S.C. § 1956. *See* U.S.S.G. § 2S1.1, comment. (n.1). The value of those funds is determined by the "relevant conduct" of the offense. *See United States v. Wright*, 651 F.3d 764, 774 (7th Cir. 2011). In cases of conspiracy,

4

racketeering, or other "jointly undertaken criminal activity," "relevant conduct" includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *See* § 1B1.3(a)(1)(B).

In this case, even assuming the $2,083,268.41 was procured through Bradley's California-based racketeering offenses, the district court did not err in considering those funds part of the relevant conduct of Bradley's money-laundering conspiracy. First, in addition to the conspiracy convictions, the jury found beyond a reasonable doubt Bradley committed "twenty-three acts of racketeering" and "acted in concert with others in relation to the fraud schemes," including those undertaken in California. *See Bradley*, 644 F.3d at 1294, 1297. Consequently, Bradley is mistaken in claiming "[t]here is no evidence from which the conclusion can be reached that" he knew of or participated in the California fraud. Such evidence was presented to the jury that convicted Bradley, it is in the record, and it was sufficient to uphold his convictions on appeal. *See id.* Second, as part of the California scheme, Bradley not only signed checks and wired money to offshore accounts for his California confederates, but he even personally paid two such individuals $90,000 in cash. Third, Bradley had control of, and authority over, the bank account on which the $2,083,268.41 worth of checks was issued. Specifically, the checks were drawn on the bank account of Bradley's Bahamian shell company, Intermed, and mailed to his California confederates from another of

5

Bradley's companies, Bio-Med.  Finally, the checks directly furthered Bradley's racketeering scheme in California—not just in theory, but also in fact—because they were part of the revised concealment strategy Bradley implemented after realizing the IRS could monitor his offshore accounts.

In light of this evidence, it borders on frivolous to claim that funds derived from the California scheme were not part of the relevant conduct of Bradley's money-laundering conspiracy.  *See* § 1B1.3(a)(1)(B).  After all, "[w]ithout the fraud there would have been no funds to launder."  *See United States v. Mullens*, 65 F.3d 1560, 1564 (11th Cir. 1995).  Bradley's racketeering activities and money-laundering conspiracy were symbiotic components of a network of fraud, and the proceeds of such a network need not be hermetically partitioned at sentencing.  *See id.* (holding a sentencing court must "consider the total amount of funds that it believed was involved in the course of criminal conduct" when ascertaining the value of laundered funds (internal quotation marks omitted)); *see also* § 1B1.3, comment. (n.2) (detailing the scope of relevant conduct in jointly undertaken criminal enterprises).  In arguing to the contrary, Bradley overlooks precisely what this Court stated in deciding his previous appeal:  "when a defendant is acting in concert with others, the appropriate conduct to consider for sentencing purposes is far broader than the conduct that drove the original conviction."  *Bradley*, 644 F.3d at 1297.  Because the Guidelines did not require the district court to segregate

6

laundered funds into discrete categories when determining the scope of relevant conduct, *see Mullens*, 65 F.3d at 1564, the court did not err in including the $2,083,268.41 in its laundered-funds calculation.

### III.  VULNERABLE VICTIM ENHANCEMENT

Finally, Bradley contends the district court erred in applying a two-level vulnerable-victim enhancement for the racketeering and money laundering conspiracy offenses pursuant to U.S.S.G. § 3A1.1(b).  This claim is foreclosed by the law of the case doctrine.  *See United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996) ("An appellate decision binds all subsequent proceedings in the same case not only as to explicit rulings, but also as to issues decided necessarily by implication on the prior appeal.").  Our prior decision squarely addressed—and squarely rejected—precisely the same challenge Bradley attempts to bring against his vulnerable-victim enhancement in this appeal.  *See Bradley*, 644 F.3d at 1299. Bradley has not shown any basis for departing from that decision, *see United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996), and therefore the district court did not clearly err in applying a vulnerable-victim enhancement under § 3A1.1(b).

### IV.  CONCLUSION

The district court's sentencing determinations are **AFFIRMED.**

7